# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

**HAWK TECHNOLOGY SYSTEMS, LLC,**

    Plaintiff,

v.                                                                                                                 **Civil Action No. _____**

**CITY OF MOBILE and**
**LADD-PEEBLES STADIUM,**

    Defendants.

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

**COMES NOW**, Plaintiff, Hawk Technology Systems, LLC, files this Complaint for patent infringement against Defendants, City of Mobile and Ladd-Peebles Stadium, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under 35 U.S.C. §§ 271, 281, 283, 284, and 285 to prevent and enjoin Defendants, City of Mobile and Ladd-Peebles Stadium, from infringing United States Patent No. 10,499,091 (the "'091 Patent"), attached hereto as Exhibit "A" and incorporated by reference, and to recover damages, attorneys' fees, and costs.

### PARTIES

2. Hawk Technology Systems, LLC ("Hawk"), is a limited liability company organized and existing under the laws of the state of Florida and maintains its principal place of business at 2 South Biscayne Blvd., Suite 3800, Miami, Florida 33131.

3. Defendant, City of Mobile, is a municipal corporation formed under the laws and rules of the State of Alabama, and is located in the City of Mobile. The City of Mobile may be served with process by and through it's City Clerk, Lisa C. Lambert, Government Plaza - South Tower, 9th Floor, 205 Government Street, Mobile, Alabama 36633.

4. Defendant, Ladd-Peebles Stadium ("LPS") is a property owned and operated by Defendant, City of Mobile, and managed by a Board of Directors, operating in Mobile County, Alabama. Ladd-Peebles Stadium may be served with process by and through the City Clerk of Mobile, Lisa C. Lambert, Government Plaza - South Tower, 9th Floor, 205 Government Street, Mobile, Alabama 36633.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §§ 1331 and 1338 (a), this Court has original jurisdiction over the subject matter of this action because this is an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq.

6. This Court has personal jurisdiction over Defendants because Defendants operates, conducts, engages in and/or carries on business in this district.

7. Venue is proper in this district under federal law including 28 U.S.C. §§ 1391(b)-(c) and 1400(b) and *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1517 (2017).

## GENERAL ALLEGATIONS

8. Hawk Technology Systems was formed in 2012 to commercialize the inventions of its founder, Barry Schwab.

9. On December 3, 2019, the United States Patent and Trademark Office, after a fair and full examination, duly issued the '091 Patent, entitled "HIGH QUALITY, REDUCED DATA RATE STEAMING VIDEO PRODUCTION AND MONITORING SYSTEM."

10. Mr. Ken Washino and Mr. Schwab invented what is claimed by the '091 Patent.

11. Mr. Washino and Mr. Schwab have collaborated on myriad pioneering inventions resulting in patents in the areas of video production, transmission, archiving, and downloading, and even digital cinema.

12. Mr. Schwab also is a named inventor on more than forty patents, ranging from consumer products to secure network computing.

13. Hawk has the right to exclude others and to enforce, sue and recover damages for past and future infringement of the '091 Patent.

14. Claim 1 of the '091 Patent states:

> A method of viewing, on a remote viewing device of a video surveillance system, multiple simultaneously displayed and stored video images, comprising the steps of:
>
> > receiving video images at a personal computer based system from a plurality of video sources, wherein each of the plurality of video sources comprises a camera of the video surveillance system;
> >
> > digitizing any of the images not already in digital form using an analog-to-digital converter;

> displaying one or more of the digitized images in separate windows on a personal computer based display device, using a first set of temporal and spatial parameters associated with each image in each window;
>
> converting one or more of the video source images into a selected video format in a particular resolution, using a second set of temporal and spatial parameters associated with each image;
>
> contemporaneously storing at least a subset of the converted images in a storage device in a network environment;
>
> providing a communications link to allow an external viewing device to access the storage device;
>
> receiving, from a remote viewing device remoted located remotely from the video surveillance system, a request to receive one or more specific streams of the video images;
>
> transmitting, either directly from one or more of the plurality of video sources or from the storage device over the communication link to the remote viewing device, and in the selected video format in the particular resolution, the selected video format being a progressive video format which has a frame rate of less than substantially 24 frames per second using a third set of temporal and spatial parameters associated with each image, a version or versions of one or more of the video images to the remote viewing device, wherein the communication link traverses an external broadband connection between the remote computing device and the network environment; and
>
> displaying only the one or more requested specific streams of the video images on the remote computing device.

See Ex. A at 8:31-9:5.

15. Claim 6 of the '091 Patent states A method of viewing, on a remote viewing device of a video surveillance system, multiple simultaneously displayed and stored video images, comprising the steps of:

>receiving video images at a personal computer based system from a plurality of video sources, wherein each of the plurality of video sources comprises a camera of the video surveillance system;
>
>digitizing any of the images not already in digital form using an analog-to-digital converter;
>
>displaying one or more of the digitized images in separate windows on a personal computer based display device, using a first set of temporal and spatial parameters associated with each image in each window;
>
>converting one or more of the video source images into a selected video format in a particular resolution, using a second set of temporal and spatial parameters associated with each image;
>
>contemporaneously storing at least a subset of the converted images in a storage device in a network environment;
>
>providing a communications link to allow an external viewing device to access the storage device;
>
>receiving, from a remote viewing device remoted located remotely from the video surveillance system, a request to receive one or more specific streams of the video images;
>
>transmitting, either directly from one or more of the plurality of video sources or from the storage device over the communication link traversing the Internet to the remote viewing device, and in the selected video format in the particular resolution, the selected video format being a progressive video format which has a frame rate of less than substantially 24 frames per second using a third set of temporal and spatial parameters associated with each image, a version or versions of one or more of the video images to the remote viewing device; and

>displaying only the one or more requested specific streams of the video images on the remote computing device.

>See Ex. A at 9:17-10:28.

16. The '091 Patent provides solutions for the problem of more and more users demanding higher and higher quality video content for viewing, creating, and editing (which requires additional data) while the physical infrastructure for data-transmission remains as it has been for decades.

17. Claims 1 through 6 of the '091 Patent teach methods for generating, transmitting, receiving, and viewing high-quality video-including on a remote device such as a smartphone-with the innovation of significantly reducing the data-transmission burden.

18. All conditions precedent to bringing this action have occurred or been waived.

19. Hawk has retained counsel to represent it in this matter and is obligated to pay its counsel a reasonable fee for its services.

20. Pursuant to 35 U.S.C. § 285, Hawk is entitled to recover its attorneys' fees.

### COUNT I: DIRECT INFRINGEMENT OF THE '091 PATENT

21. The allegations contained in paragraphs 1-20 above are hereby re-alleged as if fully set forth herein.

22. Without Hawk's authorization, Defendants infringed Claim 1 of the '091 Patent, and one or more of Claim 1's dependent claims, as well as Claim 6.

23. A chart, attached hereto as Exhibit "B" and incorporated by reference hereto, describes how Defendants perform each step of the methods disclosed by Claims 1 through 6 of the '091 Patent.

24. As a result of Defendants' infringement of the '091 Patent, Hawk has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendants' past infringement, together with interests and costs.

25. Hawk will continue to suffer damages unless Defendants are enjoined by this Court to cease its infringing activities, and Hawk is entitled to compensation for continuing and future infringement until Defendants finally cease to infringe the '091 Patent.

**WHEREFORE**, Hawk respectfully requests the Court:

A. Enter a Judgment finding that Defendants, City of Mobile and Ladd-Pebbles Stadium, have directly infringed Claim 1 of the '091 Patent or one of Claim 1's dependent claims;

B. Order that Defendants, City of Mobile and Ladd-Pebbles Stadium, be permanently restrained and enjoined from directly infringing the '091 Patent;

C. Order Defendants, City of Mobile and Ladd-Pebbles Stadium, to pay damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, together with interest and costs, pursuant to 35 U.S.C. § 284;

D. Find this to be an exceptional case of patent infringement under 35 U.S.C. § 285 and award reasonable attorneys' fees, costs, and expenses incurred by Hawk in prosecuting this action; and

E. Award such other and further relief as the Court deems just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED**, this the 20th day of October, 2020.

s/Frank J. Dantone
**FRANK J. DANTONE (DAN054)**
**HENDERSON DANTONE, P.A.**
241 Main St. (38701)
P.O. Box 778
Greenville, MS 38702
T. (662) 378-3400
F. (662) 378-3413
E. fjd@hdpa.com

Counsel for Plaintiff,
Hawk Technology Systems, LLC